# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LAURIE MISKUSKI,<br><br>                    Plaintiff,<br>  v.<br><br>CRESCENT HEIGHTS OF AMERICA, INC., a corporation, SONNY KAHN, an individual, BRIAN DUCHMAN, an individual, KATHY CURTIS, an individual, and DOES 1 through 100, inclusive,<br><br>                    Defendants. | CASE NO.  06cv2739 BTM(LSP)<br><br>**ORDER GRANTING MOTION FOR JUDGMENT ON THE PLEADINGS; GRANTING IN PART AND DENYING IN PART MOTION FOR LEAVE TO FILE FIRST AMENDED COMPLAINT; AND DENYING MOTION FOR REMAND** |

      Defendants Sonny Kahn, Brian Duchman, and Kathy Curtis ("Defendants") have filed a Motion for Judgment on the Pleadings on the second and fifth causes of action. Plaintiff has filed a Motion for Leave to File a First Amended Complaint and a Motion for Remand. For the reasons discussed below, Defendants' Motion for Judgment on the Pleadings is **GRANTED**, Plaintiff's Motion for Leave to File a First Amended Complaint is **GRANTED IN PART** and **DENIED IN PART**, and Plaintiff's Motion for Remand is **DENIED**.

///
///

## I. **FACTUAL ALLEGATIONS**

The following facts are taken from Plaintiff's Complaint. The Court makes no finding as to the truth of the allegations.

Plaintiff Laurie Miskuski began working for Defendant Crescent Heights of America, Inc. ("Crescent Heights") in 1998 and quickly worked her way up the ranks to the position of Project Manager. (Complaint, ¶ 11.) In the Fall of 2005, Plaintiff's doctor informed her that he had found a tumor in one of her ovaries and that further tests needed to be performed. (Id. at ¶ 15.) In late December, after test results came back, Plaintiff's doctors scheduled immediate surgery and advised Plaintiff that she would need four to six weeks of leave to recover from the surgery. (Id. at ¶ 17.) In addition, Plaintiff's doctors informed her that the CT scan revealed a second tumor in her leg, which could be indicative of bone cancer. (Id. at ¶ 18.)

Plaintiff informed Defendant Brian Duchman, a supervisor, of her medical condition and her need to take leave. (Id. at ¶ 19.) Duchman repeatedly assured Plaintiff that she was extremely valuable to the company, that her job would be safe, and that there would be no changes to her job status as a result of her condition. (Id. at ¶ 20.) Plaintiff also met with Human Resources Representative Vital Osegueda[1] about her need to take medical leave. (Id. at ¶ 21.) Plaintiff asked Osegueda whether she needed to take vacation time in order to ensure that she would be compensated for her medical leave. (Id.) Osegueda assured Plaintiff that she did not need to use personal leave and that she would be paid. (Id.) Plaintiff filled out CFRA-related paperwork at his request. (Id.)

Plaintiff underwent surgery on January 5, 2006, and took leave until February 6, 2006. (Id. at ¶ 22.) When Plaintiff returned to work, she found that her office had been completely rearranged and that her desk had been cleaned out. (Id. at ¶ 23.) Duchman told Plaintiff that she had been permanently replaced, that she was no longer involved in the operations end of Crescent Heights, and that she would be assigned other duties to be determined at a later

---

[1] The Complaint incorrectly spells his name "Oswega." The proposed First Amended Complaint corrects the spelling.

time. (Id. at ¶ 25.) Duchman told Plaintiff that whether she had future employment with the company depended on her attitude. (Id. at ¶ 26.) Duchman refused to answer any questions regarding her future level of compensation but did inform her that she would not receive her expected compensation on the Verano project. (Id.)

The next morning, Plaintiff packed up her office belongings and met with Duchman, who purposefully humiliated Plaintiff by walking her through every department where she had previously served as a manager and pointing to empty desks while loudly stating, "Oh, there's a spare desk. Maybe you could sit here." (Id. at ¶ 29.) Eventually, Plaintiff was placed in a small bedroom in a condominium development which was completely isolated from the sales and operations building. (Id.)

Plaintiff was never provided new business cards for her new position, was not allowed to attend meetings, and received no phone calls. Only after repeated requests was she given a partial job description. (Id. at ¶ 34.) The bullet points that were supposed to detail her duties were left blank. (Id.)

On or about February 10, 2006, Plaintiff wrote an e-mail to Osegueda, complaining of CFRA discrimination. (Id. at ¶ 36.) The following week, Kathy Curtis, Director of Human Resources, flew out to San Diego to meet with Plaintiff. (Id. at ¶ 37.) Instead of addressing Plaintiff's discrimination complaint, Curtis gave Plaintiff a "one year review." The review was extremely negative and was based on entirely subjective criteria. (Id.) Curtis also informed Plaintiff that her compensation on the in-process Nobel development was being cut from a .25 override to a .1 override - a difference amounting to approximately $200,000. (Id. at ¶ 38.)

Plaintiff also learned that she had not been paid for her CFRA leave, despite prior assurances that she would be. (Id. at ¶ 39.) Plaintiff sent a second e-mail to human resources questioning the changes to her compensation and requesting an explanation. (Id. at ¶ 40.) The following week, Duchman met with Plaintiff and demanded to know whether she intended to sue the company. (Id. at ¶ 41.) Duchman told Plaintiff that he could "fix" the situation if she would send e-mails rescinding her complaints and sign a release.

Shortly thereafter, Duchman informed Plaintiff that her compensation was not going to be changed and that an offer letter was forthcoming, but conditioned the offer letter on Plaintiff sending Curtis an e-mail explaining how happy and excited she was about the new position. (Id. at ¶ 45.) Plaintiff did not send the requested e-mail and never received the offer letter. (Id. at ¶ 46.)

During this time period, a paycheck error occurred, depriving many employees of payment on seven closings. (Id. at ¶ 47.) When the error was caught, all affected employees except Plaintiff received their proper compensation within days. (Id.)

At the end of February 2006, Plaintiff saw her doctor, who immediately placed her on one week of medical leave due to stress. (Id. at ¶ 48.) While she was on leave, a rumor began circulating at the office that Plaintiff had engaged in sexual relations with Duchman in order to obtain her position. (Id. at ¶ 49.)

On or about March 3, 2006, Plaintiff attempted to return to work. (Id. at ¶ 50.) However, the atmosphere continued to be hostile and harassing. (Id.) After a few days, Plaintiff's mental status deteriorated and her physician recommended that she take extended stress leave to recuperate. (Id.)

## II. PROCEDURAL HISTORY

On July 28, 2006, Plaintiff filed her Complaint in Los Angeles Superior Court. The Complaint names as defendants Crescent Heights, Sonny Kahn, Brian Duchman, and Kathy Curtis. The Complaint asserts causes of action for (1) interference with protected leave under the California Family Rights Act; (2) retaliation in violation of the California Family Rights Act; (3) disability discrimination; (4) wrongful termination in violation of public policy; and (5) intentional infliction of emotional distress.

On September 15, 2006, Crescent Heights filed a motion to transfer venue to San Diego County. The motion was granted, and the case was transferred to San Diego Superior Court.

On September 15, 2006, Crescent Heights removed the action to this Court. The

basis of removal was diversity jurisdiction.

### III. DISCUSSION

**A. Plaintiff's Motion to Amend and Motion to Remand**

Plaintiff seeks to amend her complaint by adding as a defendant human resource representative Vital Osegueda and by adding a sixth cause of action for retaliation (based on protected complaints of disability discrimination) in violation of California's Fair Employment and Housing Act ("FEHA") (Cal. Gov't Code § 12940) and a seventh cause of action for harassment in violation of FEHA. Plaintiff also moves to remand this action on the ground that if the Court allows Plaintiff to join Osegueda as a defendant, diversity jurisdiction will be destroyed. Although the Court will allow Plaintiff to amend her complaint by adding the additional FEHA causes of actions, the Court will not permit the joinder of Osegueda and will not remand the action.

Under 28 U.S.C. § 1447(e), "If after removal the plaintiff seeks to join additional defendants whose joinder would destroy subject matter jurisdiction, the court may deny joinder, or permit joinder and remand the action to the State court." District courts in this Circuit consider various factors in determining whether to permit joinder under section 1447(e), including the following: (1) whether the party sought to be joined is needed for just adjudication and would be joined under Fed. R. Civ. P. 19(a); (2) whether the statute of limitations would bar the filing of a new action against the new defendant if the court denied joinder; (3) whether there has been unexplained delay in seeking the joinder; (4) whether the joinder is solely for the purpose of defeating federal jurisdiction; and (5) whether the claim against the new party seems valid. IBC Aviation Services, Inc. v. Compania Mexicana de Aviacion, 125 F. Supp. 2d 1008, 1011 (N.D. Cal. 2000); Clinco v. Roberts, 41 F. Supp. 2d 1080, 1082 (C.D. Cal. 1999).

No argument can be made that Osegueda is a necessary party under Fed. R. Civ. P. 19(a). However, the fact that Osegueda does not meet the restrictive requirements of Fed.

1  R. Civ. P. 19(a) does not control the Court's analysis under section 1447(e).  See Righetti
2  v. Shell Oil Co., 711 F. Supp. 531, 535 (N.D. Cal. 1989) (explaining that Congress gave the
3  courts broad discretion to allow joinder under section 1447(e) and that such discretion is
4  inconsistent with the more restrictive approach under Rule 19).

5  Plaintiff would not be prejudiced if the Court denied joinder because Plaintiff could file
6  a separate action against Osegueda in state court.  The DFEH issued Plaintiff's Right to Sue
7  Notice on January 11, 2007.  Therefore, Plaintiff has until January 11, 2008 to file a lawsuit
8  against Osegueda.  See Cal. Gov't Code § 12965(b).

9  It appears that the only reason Plaintiff seeks to join Osegueda is to destroy diversity
10 jurisdiction.  Plaintiff knew of Osegueda and his involvement in the events underlying
11 Plaintiff's claims at the time Plaintiff filed her original complaint on July 28, 2006.  The original
12 complaint actually identified Osegueda by name.  However, Plaintiff did not file a DFEH
13 charge against Osegueda until January 9, 2007, several months after this action was
14 removed.  Plaintiff's explanation that she inadvertently failed to pursue claims against
15 Osegueda is unpersuasive.

16 Some courts have held that the plaintiff's motive for adding a non-diverse defendant
17 should not be considered in determining whether to allow joinder under section 1447(e).  See
18 Righetti, 711 F. Supp. at 535.  Even if the Court does not consider Plaintiff's motive, the
19 Court finds that joinder would not be appropriate given the lack of prejudice to Plaintiff and
20 the questionable validity of her claims against Osegueda.

21 According to the proposed First Amended Complaint ("PFAC"), Plaintiff talked to
22 Osegueda before taking her medical leave.  Osegueda assured her that she did not need to
23 take personal leave in order to be paid for her medical leave.  (PFAC, ¶ 22.)  Plaintiff filled
24 out CFRA-related paperwork at his request.  (Id.)  On February 10, 2006, Plaintiff sent an e-
25 mail to Osegueda complaining of CFRA discrimination and/or discrimination on the basis of
26 her medical condition/disability.  (Id. at ¶ 37.)  Shortly thereafter, Plaintiff sent a second e-
27 mail to Osegueda questioning the changes to her compensation and requesting an
28 explanation.  (Id. at ¶ 41.)  Later, Osegueda intimated to Plaintiff that the "company stance"

was that what was happening to her was unrelated to her medical leave and that she would have to take care of the issue herself.  (Id.)

Although the PFAC includes a general allegation that "Plaintiff is informed and believes and on that basis alleges that Vital Osegueda . . . was a human resources representative with Defendant Employer *with control over the terms and conditions of Plaintiff's employment*" (emphasis added), there are no facts alleged in support thereof. Plaintiff does not allege that Osegueda actually participated in making decisions regarding Plaintiff's position, compensation, or other terms of employment.  Osegueda was the human resources point person who answered questions regarding CFRA leave, received Plaintiff's discrimination complaints, and related the "company stance" regarding Plaintiff's discrimination claims. Plaintiff does not allege any facts indicating that Osegueda was anything more than a rank-and-file human resources employee. It was Kathy Curtis, *Director of Human Resources*, who responded to Plaintiff's complaints of discrimination by conducting a performance review and informing Plaintiff that her compensation on the Nobel development was being reduced.  Indeed, according to the Declaration of Kathy Curtis submitted by Defendants, Osegueda has no supervisory authority over any employee and has no authority to make any employment-related decisions about Plaintiff or anyone else.

Accordingly, the Court has doubts about the merits of Plaintiff's claims against Osegueda and will not allow Plaintiff to destroy diversity by joining him as a defendant. Plaintiff's motion to amend the complaint is **DENIED** to the extent that Plaintiff seeks to join Osegueda but is **GRANTED** to the extent Plaintiff wishes to add claims for retaliation and harassment under FEHA.  In addition, Plaintiff's motion to remand is **DENIED**.

B.    Motion for Judgment on the Pleadings

Defendants move for judgment on the pleadings with respect to the second cause of action for retaliation in violation of the California Family Rights Act ("CFRA") and the fifth cause of action for intentional infliction of emotional distress ("IIED").  As discussed below,

the Court finds that Defendants are entitled to judgment as a matter of law on the CFRA retaliation action. The Court also dismisses the IIED cause of action but will allow Plaintiff to seek leave to amend if discovery uncovers any evidence supporting such a claim.

"After the pleadings are closed but within such time as not to delay the trial, any party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). Judgment on the pleadings is proper "when the moving party clearly establishes on the face of the pleadings that no material issue of fact remains to be resolved and that it is entitled to judgment as a matter of law." Hal Roach Studios, Inc. v. Richard Feiner & Co, Inc., 896 F.2d 1542, 1550 (9th Cir. 1989). All allegations of fact by the party opposing the motion are accepted as true, and construed in the light most favorable to that party. General Conference Corp. of Seventh-Day Adventists v. Seventh-Day Adventist Congregational Church, 887 F.2d 228, 230 (9th Cir. 1989).

### 1. Retaliation for Excercise of CFRA Rights

Plaintiff's CFRA retaliation claim against Defendants fails because only employers can be held liable for retaliation under the CFRA. The CFRA provides:

> It shall be an unlawful employment practice for an employer to refuse to hire, or to discharge, fine, suspend, expel, or discriminate against, any individual because of any of the following:
> (1) An individual's exercise of the right to family care and medical leave provided by subdivision (a).

Cal. Gov't Code § 12945.2(l).

The CFRA defines an "Employer" as "Any person who directly employs 50 or more persons to perform services for a wage or salary." Cal. Gov't Code § 12945.2(c)(2)(A). Under the plain meaning of the statute, individual supervisors cannot be sued for retaliation under the CFRA. Cf. Reno v. Baird, 18 Cal. 4th 640 (1998) (holding that individual supervisors could not be sued for discrimination under the FEHA, which prohibited "an employer" from engaging in discrimination).

Plaintiff points out that a regulation promulgated by the FEHC indicates that individual supervisors can be held liable for retaliation under the CFRA. The regulation provides, in

pertinent part, "[I]t shall be an unlawful employment practice for any person to discharge, fine, suspend, expel, punish, refuse to hire, or otherwise discriminate against any individual . . . because that individual has . . . exercised his or her right to CFRA leave . . . ." Cal. Code Regs. Tit. 2, § 7297.7.

Courts "assign great weight to the interpretations an administrative agency like the FEHC gives to the statutes under which it operates, although ultimately statutory interpretation is a question of law the courts must resolve." Reno, 18 Cal. 4th at 660. The FEHC regulation cannot counteract the clear language of the statute, which limits liability for retaliation under the CFRA to employers.

Plaintiff argues that individual supervisors may be held liable under Cal. Gov't Code § 12940(h), which makes it unlawful "[f]or any employer . . . *or person* to discharge, expel, or otherwise discriminate against any person because the person has opposed any practices forbidden under this part or because the person has filed a complaint, testified, or assisted in any proceeding under this part." (Emphasis added.)  Plaintiff contends that "this part" refers to Part 2.8 of the Government Code, which includes section 12945.2.

However, even assuming section 12940(h) is referring to "Part 2.8," at the time section 12940(h) was enacted, Part 2.8 did not include section 12945.2.  Section 12945.2 did not come into existence until a decade after section 12940 and Part 2.8 were added by Stats. 1980 C. 992, § 4.  Section 12945.2 includes its own provision regarding retaliation for an employee's exercise of the right to family care and medical leave.  If retaliation for the exercise of CFRA rights is governed by section 12940(h), the language in section 12945.2(l) is redundant in part (because 12940(h) would also prohibit an employer from retaliating) and contradictory in part (because 12940(h) does not limit liability for retaliation to the employer).

It is a principle of statutory construction that "[a] specific provision relating to a particular subject will govern a general provision, even though the general provision standing alone would be broad enough to include the subject to which the specific provision relates." People v. Tanner, 24 Cal. 3d 514, 521 (1979).  Another principle of statutory construction is that every part of a statute serves a purpose and that nothing is superfluous.  In re J.W., 29

Cal. 4th 200, 209 (2002).  Respecting these principles, the Court determines that Plaintiff's CFRA retaliation claim is governed by section 12945.2(l), which does not provide for individual supervisor liability.  Therefore, judgment on the pleadings is granted in favor of Defendants on this claim.

### 2.  IIED

The factual allegations of the Complaint do not support a claim of IIED against any of the individual defendants.

An essential element of an IIED claim is outrageous conduct beyond the bounds of human decency.  <u>Cole v. Fair Oaks Fire Protection Dist.</u>, 43 Cal. 3d 148, 155 (1987).  "A simple pleading of personnel management activity is insufficient to support a claim of intentional infliction of emotional distress, even if improper motivation is alleged."  <u>Janken v. GM Hughes Electronics</u>, 46 Cal. App. 4th 55, 80 (1996).

The allegations regarding Kathy Curtis relate to personnel management activity, including a negative performance review and Curtis' involvement in compensation issues.  There are no factual allegations regarding non-personnel management activity by Curtis.  Therefore, Plaintiff has not made out a claim of IIED against Curtis

There are no specific factual allegations regarding Sonny Kahn.  Accordingly, Plaintiff's IIED claim against Khan fails as well.

As for Brian Duchman, Plaintiff claims that he went beyond his managerial functions when he embarrassed her by walking her through the office, loudly stating, "Oh, there's a spare desk.  Maybe you could sit here."  Although this alleged behavior was rude and somewhat humiliating, it was not so extreme that it exceeded all bounds of decency.

In her papers, Plaintiff claims that "Defendants started a humiliating rumor that Plaintiff had engaged in sexual relations to obtain her position."  However, the Complaint does not identify Defendants as the source of the rumor.  The Complaint merely states, "While she was on leave, a humiliating rumor about Plaintiff began circulating the office, namely that she had engaged in sexual relations with Defendant Duchman in order to obtain

her position." (Complaint, ¶ 49.)  The Court cannot imply that it was Defendants, as opposed to other Crescent Heights employees, who started the rumor.

Due to the absence of factual allegations supporting an IIED claim against Defendants, the Court **DISMISSES** the IIED claim **WITHOUT PREJUDICE**.  If Plaintiff discovers evidence that any of the Defendants in fact started the rumor, Plaintiff may seek leave to amend her complaint to reassert the IIED claim.

### IV. CONCLUSION

For the reasons discussed above, Plaintiff's Motion for Leave to File First Amended Complaint [14] is **GRANTED IN PART** and **DENIED IN PART**.  Plaintiff may not join Vital Osegueda as a defendant but may add causes of action for disability discrimination and harassment under FEHA. Plaintiff's Motion for Remand [13] is **DENIED**. Defendants' Motion for Judgment on the Pleadings [12] is **GRANTED**.  Judgment shall be entered in favor of Kahn, Duchman, and Curtis on the second cause of action for retaliation in violation of the California Family Rights Act.  Plaintiff's IIED claim is **DISMISSED WITHOUT PREJUDICE**. Plaintiff may seek leave to reassert the IIED claim upon discovery of facts supporting such a claim.  Plaintiff shall file her First Amended Complaint within 20 days of the filing of this order.

**IT IS SO ORDERED.**

DATED: May 21, 2007

Hon. Barry Ted Moskowitz
United States District Judge